# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

RAYMOND OBIAJULU,

    Plaintiff,

v.

RITE AID HDQTRS. CORP., et al.,

    Defendants.

Case No. 2:07-CV-1287-KJD-LRL

**ORDER**

Currently before the Court is Defendants Rite Aid Hdqtrs. Corp. and Rite Aid Corporation's (referred to jointly herein as "Defendants") Motion for Summary Judgment (#94). Plaintiff filed a Response in Opposition (#97), to which Defendants filed a Reply (#98). Specifically, Defendants seek that the Court grant summary judgment against Plaintiff pursuant to Fed. R. Civ. P. 56, averring that Plaintiff has failed to allege a prima facie case of retaliation.

Plaintiff Raymond Obiajulu's ("Obiajulu") Second Amended Complaint (#23) alleges one claim for relief for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and seeks injunctive relief requiring Rite Aid to reinstate him to his position with full back pay and the restoration of his benefits and seniority. Plaintiff alleges that Rite Aid retaliated against him for filing charges of discrimination against Rite Aid in April 2004, and for filing a complaint in another matter against Rite Aid and the Teamsters Local Union #995 in February 2005. Specifically,

Obiajulu claims that following the filing of his discrimination charge against Rite Aid, and continuing up to and including the date of his termination of employment, he was retaliated against by Defendants in the form of oral and written discipline, and the creation of a hostile work environment.

Plaintiff Obiajulu was hired by Rite Aid as a staff pharmacist on January 15, 1999. His Complaint alleges that on or about April 19, 2005, he was informed by his employer that he made three prescription mistakes during a three-month period, and that he should receive a write up and/or discipline. According to Plaintiff, when he inquired about the alleged prescription errors, he was informed that the dates of the errors were May 31, 2004, June 20, 2004, and March 11, 2005. He was subsequently informed that a meeting between Rite Aid management and Obiajulu was scheduled for May 6, 2005. Allegedly, at the May 6, 2005 meeting, Obiajulu was told he was being written up for the three errors—which occurred on dates other than May 31, 2004, June 20, 2004, and March 11, 2005. The Complaint next alleges that Plaintiff Obiajulu was suspended from employment on July 6, 2005, and that Defendant Rite Aid refused to give him a written reason for suspension. Obiajulu alleges that because he refused to leave without written notice, Rite Aid called the police to escort him from the store premises. On or about July 9, 2005, Plaintiff received a letter dated July 8, 2005, from Rite Aid's human resources manager, Alan Keel. The letter stated that Plaintiff Obiajulu was discharged from his employment for "violation of company policy." (Am. Compl. at 4.)

Defendants' Motion for Summary Judgment provides additional information and evidence regarding Plaintiff's suspension and discharge. Specifically, Defendants aver that Plaintiff's employment was ultimately terminated as a consequence of insubordination.

**II. Standard of Law for Summary Judgment**

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ.

P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant. See Lujan v. Nat'l Wildlife Fed'n., 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248.

**III. Discussion**

Here, Defendants' Motion avers that Obiajulu cannot establish a prima facie case of retaliation because his allegations that he was retaliated against by being written up and/or disciplined for prescription errors do not rise to the level sufficient to establish a prima facie case of retaliation under Title VII. Defendants also aver that Obiajulu's insubordination precludes a finding

of adequate performance required to state a claim under Title VII.  Additionally, Defendants aver that even if Plaintiff has established a prima facie case of retaliation, he fails to establish that Rite Aid's reason for taking action against him was pretextual.   The Court agrees that Plaintiff has failed to alleges a prima facie case of retaliation against Rite Aid.  Moreover, the Court finds that even if Plaintiff has alleged a prima facie case of retaliation, he has presented no admissible evidence to rebut Rite Aid's strong showing of a non-retaliatory reason for his suspension and termination.

**A. Disparate Treatment**

The Ninth Circuit has held that the three stage order and allocation of proof set forth in McDonnell Douglas Corp v. Green, 411 U.S.792, 802–04 (1973), for disparate treatment actions brought under Title VII, also governs actions brought for retaliatory discharge.  See Miller v. Fairchild Industries, Inc., 885 F.2d 498 (9th Cir. 1989); Yartzoff v. Thomas, 809 F.2d 1371 (9th Cir. 1987); Ruggles v. California Polytechnic State Univ., 797 F.2d 782, 784 (9th Cir. 1986).

 According to McDonnell Douglas and its progeny, to state a prima facie case of disparate treatment under Title VII, Plaintiff Obiajulu must show that (1) he belongs to a protected class, (2) he was performing according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees outside of his protected class were treated more favorably.  See McDonnell Douglas Corp. v. Green, 411 U.S. at 802; Bergene v. Salt River Project Agr. Imp. And Power Dist., 272 F.3d 1136, 1140 (9th Cir. 2001); see also Foss v. Thompson, 242 F.3d 1131, 1134 (9th Cir. 2001).   Once a plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate nondiscriminatory reasons for the allegedly discriminatory conduct.  See Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1109 (9th Cir. 1991) (superseded by statute on other grounds as recognized in Dominguez-Curry v. Nevada Transp. Dept., 424 F.3d 1027 (9th Cir. 2005) (quoting Lowe v. City of Monrovia, 775 F.2d 998, 1009 (9th Cir.1985)).  The employer's articulation of a facially nondiscriminatory reason shifts the burden back to the plaintiff to show that the employer's reason was a pretext for discrimination. Id.

4

As stated above, Plaintiff's Complaint avers that he was subjected to retaliation in the form of oral and written discipline and the creation of a hostile work environment by being "written up" for prescription misfills. Specifically, Plaintiff states that he was alleged to have made prescription errors on May 31, 2004, June 20, 2004, March 11, 2005, March 22, 2005, April 5, 2005, and April 26, 2005. (Pl.'s Resp. at 5–6.) Plaintiff's Response sets forth detailed accounts regarding each alleged prescription error, and argues that the errors were not justified, and/or were fraudulent. Plaintiff fails however, to effectively demonstrate that said error allegations constitute adverse employment actions.

**B. Adverse Employment Action**

An adverse employment action is one that is materially adverse, meaning "more than a mere inconvenience or an alteration of job responsibilities." Hilt-Dyson v. City of Chicago, 282 F.3d 456 (7th Cir. 2002) (citation omitted); see also Luox v. Maire, 2009 WL 2017933 (9th Cir. July 8, 2009) (noting that only a materially adverse change constitutes a tangible employment action—and that a bruised ego, demotion without material changes, and reassignment to a more inconvenient job do not constitute such a change). Not every negative employment decision or event is considered an adverse employment action that can give rise to a discrimination or retaliation cause of action. See Southard v. Texas Bd. of Criminal Justice, 114 F.3d 539 (5th Cir. 1997); Montandon v. Farmland Industries, Inc., 116 F.3d 355, 22 A.D.D. 661 (8th Cir. 1997); Joiner v. Ohio Dept. of Transp., 949 F. Supp. 562 (S.D. Ohio 1996).

The Ninth Circuit has defined the term "adverse employment action" broadly, including a "wide array of disadvantageous changes in the workplace". See Fonseca v. Sysco Food Services of Arizona, 374 F.3d 840, 847 (9th Cir. 2004); Ray v. Henderson, 217 F.3d 1234, 1241 (9th Cir. 2000). Employment actions that have been recognized as adverse by the Ninth Circuit include an employer's action that negatively affects its employee's compensation, see Little v. Wendermere Relocation, Inc., 301 F.3d 958, 970 (9th Cir. 2002), the transfer of job duties, see St. John v. Employment

1  Development Dept., 642 F.2d 273, 274 (9th Cir. 1981) (noting that mere ostracism by co-workers
2  does not constitute an adverse employment action), or "an ultimate employment decision, such as
3  discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms and
4  conditions, or privileges of employment, deprives him or her of employment opportunities or
5  adversely affects his or her status as an employee." Gupta v. Florida Board of Regents, 212 F.3d
6  571, 587 (11th Cir. 2000) (quoting Robinson v. City of Pittsburg, 120F.3d 1286, 1300 (3d Cir.
7  1997)).

8       Here Plaintiff's Complaint and Response make numerous allegations of retaliatory treatment
9  by Rite Aid, yet fail to provide any admissible evidence to support said allegations—other than his
10 own self serving testimony.  Plaintiff's arguments fail to allege actions (other than Plaintiff's
11 suspension and termination allegations discussed *infra*) that constitute a materially adverse change in
12 his employment.   Additionally, the Court notes that the exhibits attached to Plaintiff's Response are
13 not supported by affidavit or any other form of acceptable verification.[1]

14      Plaintiff asserts *inter alia* that the prescription errors or discipline he allegedly committed on
15 March 11, 2005, and March 22, 2005, respectively, resulted in "discipline" being taken against him.
16 Plaintiff neglects however, to provide any admissible evidence to support his assertion, and fails to
17 demonstrate that any of the alleged prescription errors resulted in an adverse employment action

---

[1] As pointed out in Defendants' Objections to Plaintiff's Response (#100), Plaintiff's Affidavit does not meet the standard for admission set forth in Fed. R. Civ. P. 56(e)(1).  Rule 56(e)(1) states that "a supporting affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify".  Here, however, Plaintiff's affidavit merely states that he "would truthfully and competently state the following matters."  Additionally, Plaintiff's Affidavit is not set forth in consecutively numbered paragraphs, contains multiple factual allegations in what is listed as one paragraph that spans several pages, and is replete with statements that are not admissible under the rules of evidence.

sufficient to support a retaliation claim.² Plaintiff simply states that he was "disciplined" by Rite Aid, but alleges no loss of wages, hours, functions or duties as a result of the alleged discipline.

Plaintiff additionally alleges that his name was removed from an overtime list, thus precluding him the opportunity to work additional overtime hours. Plaintiff fails however, to offer any evidence that an overtime list existed, or that his name was removed from said list. Defendants, in opposition, present the deposition testimony of Rite Aid Pharmacy District Manager, Gerry Primavera, who denies that any such list existed. (Defs.' Reply at 5.)

Plaintiff also alleges that he was harassed for a cash register malfunction, yet, admits that he was not written up for the alleged incident, and even admits that there actually was a cash register malfunction that caused a cash shortage. Plaintiff additionally claims that he was invited to a meeting with Rite Aid management on June 4, 2005, wherein he was questioned regarding a prescription filling investigation, yet fails to describe any adverse action against him as a result of said meeting. (See Resp. at 2.)

Plaintiff's Response additionally claims that he was retaliated against when Rite Aid hired a new pharmacy manager who changed Plaintiff's work schedule. Obiajulu avers that Rite Aid acted in violation of his Collective Bargaining Agreement by allowing the new manager to change the schedule without his input.³ Plaintiff avers that "[t]he scheduling issue is merely a pretext for intentional retaliation against [him] for bringing NERC/EEOC charges and a lawsuit against Rite

---

²The Court finds Plaintiff's Response in Opposition (#97) to be procedurally defective in numerous ways. Local Rule 10-1 requires papers filed with the Court to be double spaced. Plaintiff's Response is single spaced. Local Rule 7-4 limits the length of briefs and points and authorities to 30 pages unless permitted by the Court. Here, Plaintiff's Motion is 17 pages, single spaced, thus exceeding the length limit if single spaced. Additionally, Local Rule 56-1 requires that motions for summary judgment and responses thereto "cite[] the particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission, or other evidence upon which the party relies." Here, Plaintiff's Response fails to provide citations to such evidence. Instead, the Court is required to sift through the 174 pages of exhibits Plaintiff submitted with his response in hopes of finding evidence to support Plaintiff's arguments. (See #97 and attached exhibits). Such deficiencies are sufficient reason to strike Plaintiff's Response, however, because Plaintiff has failed to allege a prima facie case of retaliation, the Court finds it unnecessary to strike said document at this time.

³The Court notes that Plaintiff filed a grievance of his suspension and termination under the CBA which went through arbitration. The arbitrator ruled against Plaintiff, and Plaintiff did not appeal the arbitration decision.

Aid." (Resp. at 15).  The Court does not agree.  Defendant's Motion for Summary Judgment sets forth a detailed account of Plaintiff's refusal to follow instructions from his superiors, in violation of the Rite Aid associate handbook, which Obiajulu received.  (Mot. for Summ. J. at 17, citing SMF at 68.)

Specifically, Rite Aid alleges that Plaintiff refused to comply with the work schedule promulgated by Pharmacy Manager Diwata Perez ("Perez").  Perez was transferred to the location where Plaintiff worked (store 6245) in July 2005.  (Mot. for Summ. J. at 8, citing SMF 5.)  In anticipation to her arrival, Perez implemented a new shift schedule for the pharmacy workers, including Plaintiff.  The shift schedule mirrored the schedule from Perez's previous location. Plaintiff did not agree with the new schedule, and complained to both Perez and Primavera that he did not agree with the schedule.  When informed that Perez, as the manager, had the final say regarding the schedule, rather than filing a grievance, Plaintiff simply disregarded the new schedule. Specifically, on July 3, 2005, even though he was not scheduled to work on the schedule promulgated by Perez for that day, Plaintiff reported for work.  According to Rite Aid, upon being asked by Primavera to go home because there were two pharmacists in the store, and there was only need for one pharmacist to be at the store at a time, Plaintiff refused.  Plaintiff was contacted by Human Resources Manager Alan Keel ("Keel") who informed Plaintiff that he should go home because he was not scheduled to work.  Again, Plaintiff refused.  Keel then faxed a letter to Plaintiff indicating that Plaintiff was "not in compliance with the work schedule as written by [the] pharmacy manager" and that he needed to work the new schedule until further notice.  (Mot. for Summ. J. at 11.)

On July 5, 2005, Plaintiff was scheduled to work, but did not report.  At that time, Keel advised Regional Vice President and then District Human Resources Director Bradley Sapp ("Sapp") of Plaintiff's conduct, and they agreed that it was grounds for suspension and possible termination. (Mot. for Summ. J. at 12.)  On July 6, 2005, Plaintiff was not scheduled to work under the schedule,

but once again reported to work. When Plaintiff refused to leave, Keel conferred with Sapp who agreed that Plaintiff's conduct was grounds for suspension and possible termination. Plaintiff was advised that he needed to follow Perez's schedule and that failing to do so would be considered insubordination that could result in suspension and possible termination. Nevertheless, Plaintiff refused to leave. Eventually, Defendants called the police to escort Plaintiff from the store. On July 8, 2005, Keel prepared and sent a letter to Plaintiff in which Plaintiff was advised that he had been terminated for insubordination. In Opposition to Rite Aid's assertion that Plaintiff was suspended and ultimately terminated for insubordination, Plaintiff avers that Rite Aid "did not offer any reason for my suspension." (Pl.'s Resp. at 15.) To the contrary, the Court finds that Defendants have supplied ample evidence supporting its nondiscriminatory reason for Mr. Obiajulu's suspension and termination.

### C. Bias

Plaintiff's Response additionally avers several unsupported "objections to the actions of [the] court" stating *inter alia* that the Court's issuance of a Klingele Order on May 27, 2009, demonstrates that the Court is responding "more quickly" to Defendants' Motions than to Plaintiff's, and is "catering to" Defendants. (See Resp. at 16.) To the contrary, the Klingele Order issued to Plaintiff notified the Plaintiff of the necessity of responding to Defendants' dispositive Motion, and identified what Plaintiff must do to adequately oppose Defendants' Motion under the local rules, so as to avoid dismissal under LR 7-2(d). Plaintiff additionally asserts that the Court is "bold in exhibiting its bias and prejudice against [him]" due to the Court's rulings regarding discovery and other motions. A review of the docket however, demonstrates that Plaintiff's assertions are unsubstantiated and mistaken.

### IV. Conclusion

As stated above, the Court finds that Plaintiff's allegations of retaliation are unsupported by the record, and do not sufficiently state a claim for retaliation under Title VII. Moreover, Plaintiff's

allegations that his suspension and termination were retaliatory are rebutted by Defendants' evidence of Plaintiff's insubordination, and Plaintiff fails to demonstrate that Defendants' actions were pretextual.

Accordingly, **IT IS HEREBY ORDERED** that Defendants Rite Aid Hdqtrs. Corp. and Rite Aid Corporation's Motion for Summary Judgment (#94) is **GRANTED**.

DATED this 21st day of October 2009.

_____
Kent J. Dawson
United States District Judge